U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 MAR -9 AM 9: 27

CLERK

BY ⟨handwritten⟩
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MARK SPOONER, )
JANELLE SPOONER, )
)
Plaintiffs, )
) Case No. 2:15-cv-00191
v. )
)
TODD TRANSPORTATION CO., )
)
Defendant. )

## OPINION AND ORDER DENYING
## DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT
(Doc. 58)

Plaintiffs Mark and Janelle Spooner, a married couple from Keeseville, New York, bring this lawsuit alleging a premises liability theory of negligence and loss of consortium arising out of Mr. Spooner's fall from a loading dock at Defendant Todd Transportation Co.'s warehousing and trucking facility located at 25 Curtis Avenue in Rutland, Vermont (the "Facility"). Mr. Spooner suffered injuries to his cervical spine which left him almost fully paralyzed from his neck down, and for which he requests an award in excess of $75,000 exclusive of interest and costs.

On August 27, 2015, Plaintiffs filed their Complaint which Defendant answered on November 4, 2015. On January 9, 2018, the court granted Plaintiffs leave to file an Amended Complaint which they filed the following day. Plaintiffs' Amended Complaint withdraws a theory of liability based upon the wet surface of the loading dock from which Mr. Spooner fell.

Currently pending before the court is Defendant's motion for summary judgment, filed on July 26, 2017, which is based on the allegations in Plaintiffs' original Complaint. In its motion, Defendant contends that it owed no duty to protect Mr. Spooner from an open and obvious danger as a matter of Vermont law. Defendant also contends that Mr.

Spooner's comparative negligence was sufficient to preclude Defendant's liability as a matter of law. On September 15, 2017, Plaintiffs opposed summary judgment, arguing that Defendant had a duty to protect Mr. Spooner because it knew or should have anticipated that Mr. Spooner would fail to protect himself from an open and obvious danger and that Mr. Spooner's own negligence does not eliminate Defendant's liability. The court heard oral argument on November 17, 2017, after which it took the pending motion under advisement.

Plaintiffs are represented by Mark A. Schneider, Esq., R. Drew Palcsik, Esq., and Todd D. Schlossberg, Esq. Defendant is represented by John T. Pion, Esq., Meredith M. Lasna, Esq., Ralph Suozzo, Esq., Stephen E. Geduldig, Esq., and William A. Staar, Esq.

## I. The Undisputed Facts.[1]

In early 2011, Mr. Spooner, a fifty-eight year old man, was employed as a delivery driver for Denton Publications, Inc. ("Denton"), a New York publisher of several regional newspapers. In addition to publishing its own papers, Denton provided printing services to other newspapers, including the Mountain Times. As part of these services, Denton delivered copies of the Mountain Times to Defendant's Facility where local delivery drivers collected them for distribution in Vermont. Defendant is in the business of moving, storage, and transfer of goods.

---

[1] Plaintiffs' Statement of Disputed Facts contains both disputed factual contentions and supplemental information. In general, this District's local rules do not authorize the nonmoving party to submit additional uncontested facts. *See* LR 56(b) ("A party opposing summary judgment . . . must provide a separate, concise statement of *disputed* material facts.") (emphasis supplied); *see also Post v. Killington, Ltd.*, 2010 WL 3323737, at *1 (D. Vt. Mar. 23, 2010) ("The Rule does not contemplate the filing of a statement of undisputed facts by the non-moving party."); *Schroeder v. Makita Corp.*, 2006 WL 335680, at *3 (D. Vt. Feb. 13, 2006) ("the Local Rules do not provide an opportunity for the nonmoving party to file a statement of *undisputed* facts at the summary judgment stage.") (emphasis in original). However, the facts presented in Plaintiffs' filing are relevant to the court's analysis of the validity of Defendant's motion for summary judgment and Defendant has not moved to strike them. The court will therefore consider them in resolving the motion to the extent they are undisputed. *See Rotman v. Progressive Ins. Co.*, 955 F. Supp. 2d 272, 276 (D. Vt. 2013) (noting that the court may consider "any additional facts that [are] both integral to the parties' arguments and undisputed.").

The Facility's main building has three loading docks, all built in 1978 prior to Defendant's acquisition of the property. Two of the docks measure approximately eight and half feet wide. The third dock is designed for oversized trailers and is approximately twelve feet wide (the "oversize loading dock"). Defendant's President Douglas Todd acknowledged that the oversize loading dock may be "unusually wide[.]" (Doc. 72-7 at 95.)

Since Defendant's purchase of the property forty years ago, it has used the Facility at least five days per week and has not altered it in any way except to replace worn-out overhead doors. Douglas Todd could not recall an instance of an employee reporting "a safety concern around the loading docks or warehouse" during Defendant's ownership. (Doc. 58-5 at 18.) Vice President of Operations Richmond Todd observed "Mr. Spooner inside of and along the edge of [the oversize loading dock] bay approximately one dozen times." (Doc. 58-6 at 3, ¶ 7.)

Mr. Spooner's job at Denton required him to transport pallets of printed papers in an eight foot wide box truck from Denton to the Facility. At the Facility, Richmond Todd typically used a forklift to remove the pallets of newspapers from Mr. Spooner's box truck and load them into a Mountain Times delivery van parked in one of the two remaining bays. Mr. Spooner's practice was to back his truck into the middle of the oversize loading dock, leaving an approximately two foot gap between each side of his eight foot box truck and the edge of the deck of the oversize loading dock.

Mr. Spooner also usually collected two empty pallets from the Mountain Times driver for return to Denton which reused them. In the event that an empty pallet returned by a Mountain Times driver was damaged, Mr. Spooner's practice was to dispose of it in a discard pile of broken pallets adjacent to the oversize loading dock. In the approximately eleven months of Mr. Spooner's employment at Denton, he disposed of broken pallets at the Facility approximately six times.

When disposing of broken pallets in the discard pile, Mr. Spooner and Defendant's employees, including Richmond Todd and Warehouse Foreman Joseph LaPoint, occasionally threw them from the oversize loading dock deck. In his previous use of this

3

practice, Mr. Spooner experienced no "difficulty with discarding a broken pallet onto the [discard] pile" and never notified any of Defendant's employees of conditions he thought were "unsafe[.]" (Doc. 58-7 at 17.) Mr. Spooner engaged in this activity with Defendant's knowledge and consent.

If they chose not to throw broken pallets off the oversize loading dock deck, Defendant's employees would lay discarded pallets on the loading dock deck, walk outside to the lower level of the oversize loading dock bay, and then carry the pallets to the discard pile.

On September 5, 2012, Mr. Spooner arrived at the Facility with a shipment of Mountain Times newspapers for distribution. A rainstorm prior to Mr. Spooner's arrival had left the metal edge of the loading dock wet. After Richmond Todd unloaded the pallets carrying Mountain Times papers, Mr. Spooner received two pallets for return to Denton: one re-usable and one broken. The broken wooden pallet measured forty inches by forty-eight inches by six inches and weighed between fifty-five and seventy-five pounds. It had sustained damage to two "runners" or "skids[,]" which were protruding about six inches. (Doc. 58-10 at 9.) Mr. Spooner placed the re-useable pallet in his box truck for return to Denton. He planned to leave the broken pallet in the discard pile adjacent to the oversize loading dock.

Mr. Spooner acknowledges that he had three choices for disposing of the broken pallet. First, he could have loaded the broken pallet into his box truck, returned it to Denton, and disposed of it there. Second, he could have laid the pallet on the oversize loading dock deck, walked outside the Facility building to the exterior of the oversize loading dock bay fifty-four inches below the deck level, and then carried the broken pallet to the discard pile. Third, he could have thrown the pallet from the oversize loading dock deck to the discard pile below. Mr. Spooner rejected the first option because he was ultimately responsible for disposing of the broken pallet and would have had to bring it home from the Denton warehouse in New York as Denton required him to clean out broken materials from its building. He rejected the second option because he

4

"already had it there on top of the dock, and [had] decided at the time [he] was going to throw it over." (Doc. 58-10 at 15.) He therefore chose the third option.

Standing the broken pallet on its end, Mr. Spooner positioned his left foot on a platform extending from the end of his box truck and his right foot on the metal edge of the oversize loading dock deck. He then placed his left hand on the front of the pallet and his right hand on the back and threw it through the gap between the side of his box truck and the edge of the oversize loading dock in the direction of the discard pile, a maneuver he had performed successfully in the past. As Mr. Spooner threw the pallet through the gap, the pallet hit him, his right foot lost its grip, and he lost his balance. He fell head first to the pavement fifty-four inches below and sustained significant injuries including almost total paralysis below his neck.

There were no protective railings or other guards in place on the oversize loading dock deck to prevent a fall. Adding a protective barrier that blocked the two foot gaps between the edge of the oversize loading dock deck and an eight foot wide box truck would not interfere with Defendant's use of the Facility.

Prior to his injury, Mr. Spooner did not believe he was "doing something hazardous[,]" (Doc. 72-10 at 26), or that throwing the pallet "was unsafe." *Id.* at 25. Defendant similarly acknowledged that, at the time of Mr. Spooner's injury, it did not believe he was "doing anything dangerous" and that it regarded Mr. Spooner as a "good conscientious and safe guy[.]" (Doc. 72-6 at 46.) Defendant further conceded that it believed its own employees' practice of throwing pallets from the oversize loading dock deck was safe.

Defendant did not ask Mr. Spooner to dispose of the broken pallet, direct him to do so in the manner he chose, or force him to perform any activity on the deck of the oversize loading dock.

Mr. Spooner believes he is approximately thirty percent responsible for his injuries. He alleges that Defendant is seventy percent responsible for them.

## II. The Disputed Facts.

The parties agree on the facts culminating in Mr. Spooner's injury, but dispute the extent to which Defendant knew the unguarded drop from the oversize loading dock was an open and obvious danger which Defendant should have anticipated Mr. Spooner would not protect himself against. Plaintiffs assert that Defendant should have anticipated Mr. Spooner would fail to protect himself from an unguarded fifty-four inch drop from the oversize loading dock, especially in light of Defendant's placement of the discard pile adjacent to and accessible from the oversize loading dock deck and Mr. Spooner's practice of throwing broken pallets from the deck to the pile below. In support of this contention, Plaintiffs point to the deposition testimony of Defendant's workplace safety expert Tony Cummings, AIA, CSI:

> Q: [Y]ou agree, by the way, that allowing someone working at the site to throw a broken pallet off of a loading dock, whether it's his own employees or a visitor, is something that has a foreseeable risk to an employer? They could foresee that something could go wrong. Someone could lose their footing and fall, right?
>
> A: It's foreseeable.

(Doc. 72-18 at 299-300.)

Defendant counters that the open and obvious nature of the oversize loading dock presented its own warning and that, prior to Mr. Spooner's injury, it had used the oversize loading dock for forty years without incident, many of its employees had walked along the edge of the oversize loading dock deck and thrown objects from it during that timeframe, and none of them had ever reported slipping or falling.[2]

The parties further dispute whether Occupational Health and Safety Administration ("OSHA") and Vermont Occupational Health and Safety Administration ("VOSHA") regulations governing fall prevention required Defendant to maintain protective guardrails at the edge of the oversize loading dock deck. In support of their

---

[2] Defendant's contention that it owed no duty to protect Mr. Spooner from an open and obvious danger because no reasonable person could fail to appreciate the danger it posed is arguably in tension with its further assertion that it was unaware of any risk and could not anticipate any harm.

6

contention that these safety regulations apply, Plaintiffs cite the opinions of their two workplace safety experts. David Berard, P.E., C.S.P., opines that "[t]he unprotected, unguarded loading dock opening was a direct violation of the applicable OSHA/VOSHA regulations." (Doc. 72-4 at 4.) George Melchior, R.A., P.E., LEED AP, opines that Defendant "did not maintain and operate its loading dock in compliance with applicable governmental safety regulations and industry safety standards. It failed to install and maintain proper fall prevention devices to protect against falls from unguarded openings at the sides of the [oversize loading dock deck] bay." (Doc. 72-3 at 5.)

Defendant relies on Mr. Cummings's expert report, which opines that the relevant OSHA/VOSHA regulations requiring guard rails do not apply during the "handling [of] materials" and concludes that Defendant "did not violate any OSHA nor other industry standards associated with the operation of the subject loading dock on the date of the subject accident" and that "[P]laintiffs' experts were incorrect to say otherwise." (Doc. 58-16 at 13-14.)

### III. Conclusion of Law and Analysis.

#### A. Standard of Review.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' ... if it 'might affect the outcome of the suit under the governing law.'" *Rodriguez v. Vill. Green Realty, Inc.*, 788 F.3d 31, 39 (2d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 39-40 (quoting *Anderson*, 477 U.S. at 248). The court "constru[es] the evidence in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in his favor." *McElwee v. Cty. of Orange*, 700 F.3d 635, 640 (2d Cir. 2012).

The moving party always "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). When the moving party has carried its burden, its opponent must produce "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "A non-moving party cannot avoid summary judgment simply by asserting a 'metaphysical doubt as to the material facts.'" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (internal quotation marks omitted).

### B. Whether Defendant Owed Mr. Spooner a Duty of Care as a Matter of Law.

Plaintiffs bring this action pursuant to the court's diversity jurisdiction, 28 U.S.C. § 1332. As a result, Vermont's common law of negligence governs their claims. *See Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 151 (2d Cir. 2013) ("federal courts apply those state rules of decision that are substantive . . . and are consistent with federal law") (internal quotation marks omitted).

The essential elements of a negligence claim under Vermont law are that Defendant owed "a legal duty, that [it] breached that duty, that the breach was the proximate cause of [Mr. Spooner's] injury, and that [Mr. Spooner] suffered actual loss or damage." *Endres v. Endres*, 2008 VT 124, ¶ 11, 185 Vt. 63, 67, 968 A.2d 336, 340 (citing *O'Connell v. Killington, Ltd.*, 665 A.2d 39, 42 (Vt. 1995)). "Whether or not one party owes a duty to another is an expression of policy considerations about when people are entitled to legal protection." *LeClair v. LeClair*, 2017 VT 34, ¶ 10, 169 A.3d 743,

8

747. The existence of a duty is generally a question of law that may be determined prior to trial if the relevant facts are undisputed. *See Endres*, 2008 VT 124, ¶ 11 ("Duty[] . . . is central to a negligence claim, and its existence is primarily a question of law.").

In their Amended Complaint, Plaintiffs rely exclusively on a premises liability theory of negligence. In *LeClair v. LeClair*, the Vermont Supreme Court held that a "premises liability theory [should be examined] under § 343 of the Restatement (Second) of Torts[.]" 2017 VT 34, ¶ 11 (footnote omitted). Under section 343 of the Restatement:

> a possessor of land is liable for physical harm caused to his invitees by a condition on the land if the possessor satisfies three requirements: (1) knows or should know that the condition presents an unreasonable risk of harm to invitees; (2) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and (3) does not exercise reasonable care to protect the invitees from the danger.

*Id.* (internal quotation marks, footnote, and emphasis omitted). The *LeClair* court emphasized that section 343 must be "read together" with section 343A of the Restatement. *Id.* at ¶ 12 (quoting RESTATEMENT (SECOND) OF TORTS § 343 cmt. a). Section 343A provides, in relevant part, that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless* the possessor should anticipate the harm despite such knowledge or obviousness." *Id.* (emphasis in original). Comment (a) to section 343 explains that section 343A "limits the liability . . . stated" in section 343.

Defendant is correct that in *LeClair*, the Vermont Supreme Court's reliance on sections 343 and 343A of the Restatement was tied to its further conclusion that "[t]he key alleged fact in [the] case is that defendant, in a position of authority vis-à-vis plaintiff, ordered [the plaintiff] to go onto [a] frosted roof despite the obvious danger involved." *Id.* at ¶ 13. Although the three-to-two majority in *LeClair* found this fact pivotal, neither section 343 nor section 343A require an employer-employee relationship, a defendant in a position of authority over a plaintiff, or a directive to embrace the "obvious danger involved" as a condition precedent to liability. *Id.* The Vermont Supreme Court's emphasis of this fact is therefore best characterized not as a separate

9

requirement, but as an application of sections 343 and 343A to the facts at issue in the case before it. In so ruling, the *LeClair* court focused on the portion of section 343A which states that a possessor of land may still be liable if he or she should have anticipated the harm to the plaintiff despite the fact that the danger on the possessor's land was open and obvious. It cited comment (e) to section 343A which states that:

> In the ordinary case, an invitee who enters land is entitled to nothing more than knowledge of the conditions and dangers he will encounter if he comes. If he knows the actual conditions, and the activities carried on, and the dangers involved in either, he is free to make an intelligent choice as to whether the advantage to be gained is sufficient to justify him in incurring the risk by entering or remaining on the land. The possessor of the land may reasonably assume that he will protect himself by the exercise of ordinary care, or that he will voluntarily assume the risk of harm if he does not succeed in doing so. Reasonable care on the part of the possessor therefore does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them.

*Id.* at ¶ 12. The *LeClair* court also emphasized the exception to the general rule explained in comment (f), which states that:

> *[t]here are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger.* In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.

*Id.* (emphasis in original). Implicit in the *LeClair* court's holding reversing summary judgment in favor of the defendant grandfather was its conclusion that, in the facts and circumstances of that case, a jury question remained as to whether the grandfather should have "anticipate[d] that the dangerous condition [would] cause physical harm to [his grandson] notwithstanding its known or obvious danger." *LeClair*, 2017 VT 34, ¶ 12 (emphasis omitted).

*LeClair* thus offers three rules. First, "whether a duty is owed is primarily a legal question in which the Legislature or courts apply general categorical rules establishing or

10

withholding liability." *Id.* at ¶ 10 (internal quotation marks omitted). In the ordinary case, that duty requires disclosure of "nothing more than . . . the conditions and dangers [an invitee] will encounter[.]" *Id.* at ¶ 12 (internal quotation marks omitted). Thus, where dangers are open and obvious, the Restatement makes clear that "[r]easonable care on the part of the possessor . . . does not ordinarily require precautions, or even warning, against dangers which are known to the visitor, or so obvious to him that he may be expected to discover them." *Id.* at ¶ 12 (internal quotation marks omitted).

Second, notwithstanding the general rule, when a defendant can and should anticipate that an open or obvious dangerous condition will cause physical harm to an invitee despite its known character, the defendant has a duty of reasonable care to protect the invitee if he or she knows the invitee will "fail to protect themselves[.]" *Id.* at ¶ 11 (emphasis omitted).[3]

Third, if there is a genuine issue of material fact as to what the defendant could or could not anticipate, or whether it was reasonable to expect the defendant to protect an invitee from his or her own lack of care, a finder of fact must generally resolve those questions.

The cases cited in the *LeClair* opinion support this interpretation. For example, in *Dos Santos v. Coleta*, 987 N.E.2d 1187, 1192 (Mass. 2013), the Massachusetts Supreme Judicial Court held that section 343A of the Restatement makes it "clear *that at least in some circumstances* should the jury ultimately conclude that the danger was, in fact, open

---

[3] The question of whether the defendant in a premises liability case should have anticipated that the plaintiff would fail to protect himself or herself from an open or obvious danger is separate and distinct from the question of whether the possessor of land "knows or should know that the condition presents an unreasonable risk of harm to invitees." RESTATEMENT (SECOND) OF TORTS § 343 (1965). It also is distinct from the question of duty. *See Hamill v. Pawtucket Mut. Ins. Co.*, 2005 VT 133, ¶ 6, 179 Vt. 250, 253-54, 892 A.2d 226, 228 ("Generally, whether there is a cognizable legal duty that supports a tort action depends on a variety of public policy considerations and relevant factors, only one of which is foreseeability."); *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997) ("In tort cases, foreseeability is often confused with duty . . . . The mere fact that a consequence might foreseeably result from an action or condition does not serve to establish a duty owing from a defendant to a plaintiff") (internal quotation marks omitted).

11

and obvious, the question remains whether the plaintiff nevertheless may recover on a duty to remedy theory." *Dos Santos*, 987 N.E.2d at 1192 (internal quotation marks and alterations omitted) (emphasis supplied). The *Dos Santos* court reasoned that:

> although a duty to warn of an open and obvious danger would be superfluous because an open and obvious danger provides its own warning, a landowner is not relieved from remedying that danger where he knows or has reason to know that lawful entrants may not heed the warning for a variety of reasons, including their own failure to exercise reasonable care.

*Id.* at 1194. In that case, the court observed that the landowner could have prevented the harm by not placing a trampoline adjacent to a shallow children's swimming pool.

The *LeClair* court also cited with approval a hypothetical application of section 343A to a premises liability claim in *Wisdom v. TJX Cos.*, 410 F. Supp. 2d 336, 346 (D. Vt. 2006). There, this court concluded that, although Vermont law had not yet squarely applied a duty-based approach to premises liability claims, a fact question remained as to whether the defendant should have anticipated the harm caused by a partially obscured clothing rack. *See id.* ("if Vermont courts were to apply the no-duty rule . . . to the entire field of premises liability, there would still be a role for a jury in determining the obviousness of the clothing rack [the plaintiff tripped over] in this case.").[4]

Here, the parties appear to agree that the unguarded open space at the edge of the oversize loading dock constitutes an open and obvious danger under Vermont law. *See Wall v. A. N. Deringer, Inc.*, 117 A.2d 390, 391 (Vt. 1955) (holding that an unmarked six inch step running the width of defendant's store was an open and obvious danger which plaintiff saw upon entering the store). They diverge, however, regarding whether Defendant should have anticipated that Mr. Spooner would fail to protect himself from a

---

[4] Other courts interpreting sections 343, 343A, and their state law counterparts have come to similar conclusions. *See, e.g., Quinn v. Morganelli*, 895 N.E.2d 507, 510 (Mass. App. Ct. 2008) ("A jury also would be warranted in finding that this was not a case of 'open and obvious' danger"); *Fleming v. Garnett*, 646 A.2d 1308, 1313 (Conn. 1994) ("It was proper, therefore, for the trial court to have left the resolution of [the obviousness of the danger] to the jury"); *Ward v. K Mart Corp.*, 554 N.E.2d 223, 234 (Ill. 1990) ("Whether in fact the condition itself served as adequate notice of its presence or whether additional precautions were required to satisfy the defendant's duty are questions properly left to the trier of fact").

12

fall from this open space despite the open and obvious risk of doing so. *LeClair*, 2017 VT 34, ¶ 12.

Defendant argues that section 343A, as adopted in *LeClair*, relieves it of any duty to protect Mr. Spooner from the open and obvious danger, reasoning that the unguarded drop posed a risk of harm that provided its own warning. It points out that it has used the Facility, including the oversize loading dock, without incident for forty years, many of its own employees walk along the unguarded edge, and the drop to the ground was a relatively minor fifty-four inches. It further points out that none of its employees required or directed Mr. Spooner to throw the broken pallet from the oversize loading dock to the discard pile, and that Mr. Spooner chose to do so of his own volition notwithstanding alternatives such as placing the broken pallet back in his box truck or walking around to the lower portion of the bay and then carrying the pallet to the discard pile. Defendant contrasts these facts with those at issue in *LeClair* wherein the plaintiff was ordered to resume work on a slippery frost-covered roof by his grandfather who was acting as his employer. It concludes that it had no way of anticipating that Mr. Spooner would fail to take reasonable precautions to protect himself from a fall.

Plaintiffs counter that Defendant owed a duty under *LeClair* because Defendant knew of and consented to Mr. Spooner's practice of throwing broken pallets to the discard pile from the deck of the oversize loading dock. Indeed, Defendant allowed its own employees to engage in this same practice and had concluded that it was safe for them to do so. As a result, Plaintiffs contend that Defendant should have anticipated that Mr. Spooner would fail to protect himself from the risk of falling into the open gap between the side of his box truck and the edge of the deck, despite the open and obvious danger it posed. Like the trampoline next the swimming pool in *Dos Santos*, Plaintiffs emphasize that the close proximity of the discard pile to the oversize loading dock deck facilitated the practice of throwing broken pallets from the deck to the pile below. They point out that even Defendant's own expert concedes that the risk of a fall in such circumstances was foreseeable. Finally, they cite their experts' opinions that the two foot gap on either side of an eight foot box truck backed into the oversize loading dock deck

required guardrails under federal regulations, that Defendant violated these safety standards, and that the existence of such regulations is evidence of the foreseeability of a fall. Collectively, Plaintiffs contend there is sufficient evidence from which a rational jury could determine that Defendant could and should have anticipated that Mr. Spooner would not heed the open and obvious danger of the oversize loading dock "for a variety of reasons, including [his] own failure to exercise reasonable care." *Dos Santos*, 987 N.E.2d at 1194.

Both parties present persuasive arguments in support of how the facts dictate their preferred outcome under *LeClair*. The court cannot resolve this factual dispute because to do so would require it to weigh the evidence to determine whether Defendant should have anticipated Mr. Spooner's fall. Because more than one rational view of the evidence exists,[5] this task is reserved for the finder of fact and is not one that court may undertake in deciding a motion for summary judgment. *See Proctor*, 846 F.3d at 608 (ruling that "the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.") (internal quotation marks omitted); *see also Ainsworth v. Chandler*, 2014 VT 107, ¶ 12, 197 Vt. 541, 547, 107 A.3d 905, 909 (reversing summary judgment where "a reasonable jury could conclude that either the danger was not open and obvious or that defendant should have foreseen the harm even if the danger was obvious."); *Kennery v. State*, 2011 VT 121, ¶ 41, 191 Vt. 44, 64, 38 A.3d 35, 47 (observing that "negligence is ordinarily a question of fact for the jury, and an allegation of . . . negligence may be dismissed by the court only if reasonable minds cannot differ.").

---

[5] "There is no material fact issue only when reasonable minds cannot differ as to the import of the evidence before the court." *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir. 1993). Undoubtedly, there will be cases which permit only one rational view of the evidence. *See, e.g., Wilson v. Glenro, Inc.*, 2012 WL 1005007, at *9 (D. Vt. Mar. 23, 2012) (granting summary judgment to defendant because "reasonable minds could not differ in concluding that [the defendant]" "could not foresee" the risk in question). This is not such a case.

14

Defendant concedes that "the reasonableness of whatever steps it took or did not take are inherently the province of the factfinder to decide." (Doc. 58-1 at 22.) In such circumstances, the court retains its responsibility to determine whether a duty exists by providing a special interrogatory which requires the jury to resolve at the outset the disputed factual questions which may give rise to or negate a duty.[6] If the jury concludes that Defendant should not have anticipated that Mr. Spooner would fail to protect himself from such a fall, it will be instructed to proceed no further and the court will resolve the case on the basis of Defendant's lack of duty. In contrast, however, if the jury concludes that Defendant should have anticipated that Mr. Spooner would not protect himself from a fall, it will be instructed to consider the remaining elements of a premises liability claim.

In the light most favorable to the nonmoving party, "[P]laintiff[s] ha[ve] demonstrated sufficient evidence to raise a genuine question of material fact for the jury regarding the foreseeability[] . . . of plaintiff suffering harm" as a result of the practice of throwing broken pallets from Defendant's oversize loading dock deck to its discard pile below. *Demag v. Better Power Equip., Inc.*, 2014 VT 78, ¶ 28, 197 Vt. 176, 188, 102 A.3d 1101, 1111. Summary judgment in Defendant's favor must therefore be DENIED.

## C.  Whether Mr. Spooner's Comparative Negligence Was Sufficient to Preclude Defendant's Liability.

Defendant asserts that "Mr. Spooner's comparative negligence is overwhelming and, in light of Vermont's modified-comparative-negligence rule, no reasonable jury could find for Plaintiffs." (Doc. 58-1 at 23.) Under Vermont law:

> [c]ontributory negligence shall not bar recovery in an action by any plaintiff, or his legal representative, to recover damages for negligence resulting in death, personal injury or property damage, if the negligence was not greater than the causal total negligence of the defendant or

---

[6] *See, e.g., Matthews v. Avalon Petroleum Co.*, 871 N.E.2d 859, 863 (Ill. App. Ct. 2007) (affirming use of special interrogatory in premises liability action asking jury to consider whether the defendant "could reasonably expect" that a person in the plaintiff's position would knowingly "proceed to encounter" a dangerous condition); *see also Vichare v. AMBAC Inc.*, 106 F.3d 457, 465 (2d Cir. 1996) ("[t]he formulation of special verdict questions rests in the sound discretion of the trial judge").

15

defendants, but the damage shall be diminished by general verdict in
proportion to the amount of negligence attributed to the plaintiff.

12 V.S.A. § 1036. Under this modified comparative negligence statute, a plaintiff is only barred from recovery if his or her negligence exceeds the combined negligence of all defendants. As the Vermont Supreme Court has observed, "[t]he comparative negligence concept has undoubtedly enlarged the fact-finding and fact-evaluation functions of the jury. This was a conscious legislative choice, but a proper allocation of responsibility to the fact-finder, bound to be respected by the courts." *Shea v. Peter Glenn Shops, Inc.*, 318 A.2d 177, 178 (Vt. 1974).

While there are undoubtedly premises liability cases where the plaintiff's own negligence is so overwhelming as to merit removing the case from the jury's consideration, the facts in this case do not satisfy that standard. The same facts which counsel against summary judgment on the issue of whether Defendant should have anticipated the risk of Mr. Spooner's fall are sufficient to permit a rational jury to conclude that Defendant was more negligent than Mr. Spooner in causing the latter's injuries. *See Wisdom*, 410 F. Supp. 2d at 345 (observing that under Vermont law, "[i]n order to determine whether and to what degree recovery is barred, a factual determination is now needed not only as to whether the plaintiff was herself negligent, but also as to how her negligence compared to the defendant's").

Because there is a genuine dispute of material fact as to whether Defendant's negligence exceeded that of Mr. Spooner, Defendant's motion for summary judgment on the issue of comparative negligence must be DENIED.

### D. Defendant's Motion for Summary Judgment with Respect to Count I of the Original Complaint.

Defendant moves for summary judgment with respect to Plaintiffs' allegations that the wet exposed metal edge of the oversize loading dock deck was unreasonably dangerous. Plaintiffs' Amended Complaint omits this claim and its associated factual allegations and instead focuses on their assertion that the lack of protective railings or other guards around the edge of the oversize loading dock deck was a proximate cause of Mr. Spooner's injuries. Defendant's motion for a judgment as a matter of law on that

count is therefore DENIED AS MOOT. Plaintiffs are, however, precluded from presenting this alternative theory of liability at trial. *See Jones v. Spentonbush-Red Star Co.*, 155 F.3d 587, 593 (2d Cir. 1998) (noting that, where plaintiff had abandoned a theory of liability, "evidence offered to prove a matter not at issue is immaterial"); *see also* Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Doc. 58) is DENIED.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 9th day of March, 2018.

Christina Reiss, District Judge
United States District Court